```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

DANIEL P. SCHROCK, etc.,         )
                                 )
               Plaintiff,        )
                                 )
     v.                          )    No. 04 C 6927
                                 )
LEARNING CURVE INTERNATIONAL, INC.,)
et al.,                          )
                                 )
               Defendants.       )
```

MEMORANDUM OPINION AND ORDER

Daniel Schrock d/b/a Dan Schrock Photography ("Schrock"), a Chicago-based professional photographer, has brought this action against a web of corporate defendants--a web that is best untangled by carving out two groupings. First, Schrock complains against the "RC2" defendants (for convenience referred to collectively by the "RC2" name), comprising Learning Curve International, Inc., RC2 Corporation and RC2 Brands, Inc. Learning Curve International, Inc. is a distributor of children's toys that was acquired in early 2003 by Racing Champions Ertl Corporation, which later changed its name to RC2 Corporation. RC2 Brands, Inc., a designer, producer and marketer of children's toys and collectibles, is a subsidiary of RC2 Corporation. As for the second group of corporate defendants (for convenience referred to collectively as "HIT Entertainment"[1]), it comprises Gullane Entertainment, Inc., Gullane Thomas Limited, Thomas

---

[1] Each of RC2 and HIT Entertainment is treated here for convenience as a singular noun.

Licensing LLC and HIT Entertainment, PLC (all are predecessors, subsidiaries or affiliates of HIT Entertainment Limited).

Schrock complains of copyright infringement by both RC2 and HIT Entertainment and breach of bailment and conversion by RC2. Each of the two sets of defendants has, with trial looming (at long last!), moved for summary judgment under Fed. R. Civ. P. ("Rule") 56. For the reasons set forth below, both motions are granted as to Schrock's copyright claims, while his state law claims against RC2 are denied without prejudice.

## Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, (477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts, viewed of course in the light most favorable to nonmovant Schrock--but within the limitations created by the extent of his compliance (or noncompliance) with the strictures of this District Court's LR 56.1.[2] Here is that summary.

Background[3]

HIT Entertainment owns the copyright in "Thomas & Friends" properties (HIT St. ¶8) and has licensed RC2 to produce toys based on those properties (HIT St. ¶9, RC2 St. ¶9). Pursuant to

---

[2] LR 56.1(a) requires each Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each such fact. Then LR 56.1(b) requires the nonmoving party to respond point by point, with citations to the record in support of (1) any claimed dispute as to the movant's variation of the facts and (2) any additional facts that the nonmovant chooses to assert. LR 56.1's goal of simplifying the determination whether there are or are not motion-defeating material factual issues has been sidetracked somewhat by cross-motions to strike the other side's submissions, initiated by Schrock and countered by RC2 (with HIT Entertainment then joining RC2's motion by reference). While neither party conforms perfectly to the prescripts of LR 56.1, each has provided sufficient information for this Court to rule on the RC2-HIT Entertainment motions. Given this opinion's ultimate holding that Schrock lacked copyright protection in his images, many of the factual assertions in the parties' LR 56.1 statements had no bearing on resolution of the motions.

[3] Each of HIT Entertainment and RC2 submitted a separate LR 56.1(a) statement. HIT Entertainment's statements will be referred to as "HIT St. ¶--," Schrock's responses as "Schrock HIT St. ¶--" and Schrock's additional statements as "Schrock HIT Add. St. ¶--." RC2's statements and Schrock's response and additional statements will be treated likewise. Where the factual assertion in a party's LR 56.1 statement is undisputed by the opposing party, this opinion will cite only to the original statement. Schrock's combined memorandum in opposition to the two Rule 56 motions will be cited as "Schrock Mem. --."

3

that license, RC2 has developed hundreds of different toys[4] with global distribution (HIT St. ¶10, RC2 St. ¶10).

From 1999 through 2003 RC2 (actually Learning Curve International, Inc. at that time) retained Schrock to create product photographs of some of its wares, including some of its Thomas & Friends toys, for use in marketing (RC2 St. ¶14, Schrock Mem. 6). In 2004 Schrock registered copyrights for a large number of photographs that he shot for RC2, including some Thomas & Friends products (HIT St. ¶21, Schrock Mem. 6).

Out of some 100 written invoices submitted by Schrock to RC2 relating to the photo shoots, at least 72 included a "usage restriction" limiting RC2's use of the photographs to two years (Schrock RC2 St. ¶¶51, 70). Schrock was paid in full for all of his submitted invoices (Schrock RC2 Add. St. ¶19). After the expiration of the claimed two-year "usage restriction" and the filing of this lawsuit, RC2 and HIT Entertainment have continued to use those product photographs over Schrock's objection (Schrock HIT Add. St. ¶¶39-40, Schrock RC2 Add. St. ¶36, Schrock Mem. 8).[5]

---

[4] RC2's Thomas & Friends toys generally take the form of scaled-down train engines, railcars and segments of railway track, along with the occasional tram, lorry or assorted vehicle (HIT Ex. I, 2002 RC2 Catalog).

[5] Schrock also charges copyright infringement through the impermissible use of some of his photographs (e.g., reproduction on RC2's website, while permissible usage was limited to catalog and product packaging). But given this opinion's conclusion that

4

## Validity of the Claimed Copyright

Two elements are required to maintain a successful copyright infringement action: Plaintiff must own a valid copyright, and defendant must have copied original elements of the copyrighted work (Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Schrock falls at the first hurdle.

Before this opinion turns to the issue that it finds dispositive, something needs to be said about what RC2 sets up as its first line of substantive attack: "that the works lack sufficient originality to be copyrightable" (its Mem. 2, followed by its Mem. Section II at 3-6).[6] Schrock quite properly responded to that contention by pointing to the long history of recognition of photography as an art form entitled to protection, a history (though Schrock does not go into the detail marshaled by the Ninth Circuit's Ets-Hokin opinion cited a bit later in this opinion) that began with President Lincoln's signing into law (just a month before his assassination) a statute that made "photographs and the negatives thereof" copyrightable (13 Stat. 540), that then continued with the Supreme Court's upholding of the constitutionality of that statute in Burrow-Giles

---

Schrock possessed no copyright over his photographs, the bases for his infringement claims are immaterial.

[6] HIT offers up the same lack-of-originality argument. Though it gives that contention third rather than first place in its opening gun memorandum, it devotes nearly half of its text (its Mem. 8-14) to that subject.

5

Lithographic Co. v. Sarony, 111 U.S. 53, 58 (1884), that then continued over the years through such classic decisions as that by Judge Learned Hand (then a District Judge) in Jewelers' Circular Pub. Co. v. Keystone Pub Co., 274 F. 932 (D.C. N.Y. 1921), aff'd 281 F. 183 (2d Cir. 1922) and that has continued to the present day (see, e.g., our Court of Appeals' opinion in Schiller & Schmidt v. Nordisco, 969 F.2d 410 (7th Cir. 1992)).

In fact courts have been generous to the photographer and his or her photographs on the subject of originality, demanding not a great deal in that respect--a process that began with the Supreme Court's reference to the photograph of Oscar Wilde involved in Burrow-Giles. And in that respect this Court is not about to conduct a comprehensive review of Schrock's work of the type that it essayed in Gentieu v. Tony Stone Images/Chicago, Inc., 255 F.Supp.2d 838 (N.D. Ill. 2003), particularly because any such parsing in this instance would involve a high degree of subjectivity.

For that reason and others this opinion eschews addressing the "originality" issue, turning instead to the question whether Schrock's photographs are derivative works. And as will be seen, what controls that inquiry is not that Schrock's work products are photographs simpliciter (thus meriting copyrightability under the generous standards referred to earlier), but are rather photographs of objects that are themselves copyrighted, bringing

6

the case within the term of art that the Copyright Act (at 17
U.S.C. §101[7]) defines as a "derivative work." On then to that
analysis.

Derivative Work?

Here is the definition of "derivative work" in Section 101:

    a work based upon one or more preexisting works, such
    as a translation, musical arrangement, dramatization,
    fictionalization, motion picture version, sound
    recording, art reproduction, abridgment, condensation,
    or any other form in which a work may be recast,
    transformed, or adapted. A work consisting of
    editorial revisions, annotations, elaborations, or
    other modifications which, as a whole, represent an
    original work of authorship, is a "derivative work."

That concept must be examined in the context of Schrock's
photographs having depicted copyrighted (or copyrightable) toys:
plastic replicas of Thomas the Tank Engine and his anthropo-
morphic friends[8] from the fantastical island of Sodor.[9]

Ink has been spilled on both sides of the caselaw's debate
over whether a photograph of a copyrighted work is a derivative
work. In their leading treatise on copyright law (Nimmer on

---

[7] Further citations to the Copyright Act will take the form "Section --," omitting the prefatory "17 U.S.C."

[8] "Friends" may be too generous a designation for some of the characters in Thomas's world (see, e.g., "Diesel," HIT. Ex. I, 2002 Catalog, at 165).

[9] Of the forty-three dioceses in the Church of England, one is actually designated "Sodor and Man," although curiously enough that diocese encompasses only the Isle of Man. Whether the island of Sodor ever existed (or perhaps still exists but somehow evades today's cartographers) is well beyond the scope of this opinion.

Copyright (2007), Professors Nimmer state that "not a great deal hinges on categorization." Hence they endorse neither position, instead pegging the copyrightability of a photograph of a copyrighted work on its level of originality under the traditional approach: "lighting, angle, perspective, and the other ingredients that traditionally apply to that art-form" (id. §3.03[C][3]).

This Court has no quarrel with that approach, having articulated it in its opinion in Gentieu, 255 F.Supp.2d at 848-49, then having applied it there in a detailed analysis. But as will be seen, that issue need not be dealt with here at all, a conclusion driven by the applicable caselaw. Hence the analysis here begins--but does not end--by turning to the debate left unresolved by Professors Nimmer--a debate well framed by two cases decided elsewhere, each handed down in 2000.

On the one hand, Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000) held that a product photograph of a Skyy vodka bottle was not a "derivative work" in statutory terms because the bottle itself was uncopyrightable--and because under Section 101 a derivative work must derive from a "preexisting work" (read: copyrightable work), a photograph of the uncopyrightable object cannot be a derivative work (id. at 1081). Although the Ets-Hokin court did not speak directly to the corollary issue now before this Court, its approach surely

8

creates the inference that if the bottle <u>had</u> been copyrightable the photograph would have been a derivative work.

Then just less than two months later District Judge Pauley of the Southern District of New York reached the opposite conclusion in <u>SHL Imaging, Inc. v. Artisan House, Inc.</u>, 117 F. Supp. 2d 301 (S.D. N.Y. 2000).[10] Holding that product photographs of picture and mirror frames were not derivative works, Judge Pauley stated (<u>id</u>. at 306):

> While the <u>Ets-Hokin</u> court correctly noted that a derivative work must be based on a "preexisting work," and that the term "work" refers to a "work of authorship" as set forth in 17 U.S.C. §102(a), it failed to appreciate that any derivative work must recast, transform or ad[a]pt the authorship contained in the preexisting work. A photograph of Jeff Koons' "Puppy" sculpture in Manhattan's Rockefeller Center, merely depicts that sculpture; it does not recast, transform, or adapt Koons' sculptural authorship. In short, the authorship of the photographic work is entirely different and separate from the authorship of the sculpture.

Even though our own Court of Appeals has not had occasion to address the issue as directly, some guidance can be gleaned from two Seventh Circuit cases. Each speaks to the subject via dictum, but the voice in which each speaks is unambiguous.

Most recently, whether books containing photographs of copyrighted Beanie Babies infringed upon the copyright holder's

---

[10] Although <u>SHL Imaging</u> as a District Court opinion is of course nonprecedential, it is cited and quoted here both because it draws the line in the sand so clearly and because it is exemplary of cases taking the same view.

rights was at issue in Ty, Inc. v. Publ'ns Int'l Ltd., 292 F.3d 512 (7th Cir. 2002), where defendant conceded that the photographs of the copyrighted works constituted derivative works (id. at 515). While the court noted that concession on a couple of occasions in describing the derivative status of the photographs (id. at 515, 519), it elsewhere stated in its own terms that the photographs were derivative works (id. at 519, 523)(emphasis on "essentially" in original):

> But For the Love of Beanie Babies might well be thought essentially just a collection of photographs of Beanie Babies, and photographs of Beanie Babies are derivative works from the copyrighted Beanie Babies themselves.
>
> \*     \*     \*
>
> A similar judgment might be possible here with regard to For the Love of Beanie Babies, which we described as basically a picture book; and the pictures are derivative works from Ty's copyrighted soft sculptures.

And some 15 years earlier Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1201 (7th Cir. 1987) had delivered the same message, albeit in conclusory fashion without explanatory analysis. Here is what the court said then:

> Rumbleseat argues among other things that the Post failed to register its copyrights properly....It seems more likely though, that what happened...is that the Post failed to perfect copyright in its derivative works--the photographs, printed in the magazine, of Rockwell's illustrations.

Schrock's photographs are product photographs--depictions of Thomas & Friends toys. Such depictions portray the three dimensional toy in two dimensions. In the words of Section 101,

10

such photographs "recast, transform[ ] or adapt[ ]" the preexisting three dimensional toy into another medium, thus creating a derivative work "based upon" the preexisting work. Such photographs are no less derivative works than are three dimensional embodiments of two dimensional drawings (e.g., a guitar created to embody a written symbol, as in <u>Pickett v. Prince</u>, 207 F.3d 402 (7th Cir. 2000), or porcelain dolls fashioned to embody Norman Rockwell illustrations, as in <u>Saturday Evening Post</u>, 816 F.2d at 1193). In sum, Schrock's photographs are derivative works of the copyrightable toys that they portray.

<u>Copyrightability</u>

To be sure, status as a derivative work does not of itself render a work uncopyrightable,[11] but it does alter the playing field. Because Section 106(2) grants a copyright owner the exclusive right to prepare (or to authorize) derivative works as part of its bundle of rights, a third party seeking to copyright a derivative work must have the permission of the copyright holder of the underlying work (<u>Pickett</u>, 207 F.3d at 406; <u>Gracen v. Bradford Exchange</u>, 698 F.2d 300, 302 (7th Cir. 1983)). And even with such permission, Section 103(b) extends the third party's copyright only to the incremental originality over the underlying work that is present in the derivative work.

---

[11] Indeed, Section 103(a) explains that the list of enumerated copyrightable works in Section 102 includes derivative works.

11

There are material parallels between this case and <u>Gracen</u>. There plaintiff Gracen painted Dorothy from "The Wizard of Oz" as part of a competition for a contract to produce paintings for a number of collectible plates (<u>Gracen</u>, 698 F.2d 301). Upon winning the competition, she turned down the contract and registered her painting for a copyright (<u>id</u>.). Nothing daunted, the plate producer used Gracen's painting as a model and commissioned another artist to create a Dorothy painting to be used on the collectible plate (<u>id</u>. at 301-02). When Gracen considered that the Dorothy plate looked too much like her own painting for comfort, she sued for copyright infringement (<u>id</u>. at 302).

Because Gracen's Dorothy painting was a work derivative of the film as the underlying work, the opinion set out to determine whether Gracen was authorized to create and copyright that derivative work (<u>Gracen</u>, 698 F.2d at 302-04). And because she had been invited to participate in the competition, the court held that Gracen had authorization to <u>produce</u> the derivative work--but what controlled a decision adverse to Gracen was that nowhere had she been given authorization to <u>copyright</u> her derivative work (<u>id</u>. at 304)[12] Consequently Gracen lacked a copyright interest in her Dorothy painting.

---

[12] There was, as well, a genuine issue of material fact as to whether Gracen had permission to <u>exhibit</u> the derivative work publicly. That issue has no relevance to the present dispute.

12

In this instance Schrock was unquestionably granted rights pertaining to his derivative work photographs. To speak of his having "permission" to create them would be an understatement--in fact he was paid (quite well--some $400,000) to do so. But nowhere in the record is there any evidence even inferentially indicating that he was authorized to copyright the derivative works. Indeed, Schrock's own deposition testimony says otherwise (HIT Ex. G, Schrock Dep. 374-75):

> Q: For any work that you've registered that is a photographic work of a Thomas the Tank Engine line product, have you sought permission from HIT Entertainment to do so?
>
> A: No. I didn't know I had to do--
>
> MR. BARINHOLTZ [Schrock's lawyer]: I would object to the form.
>
> By MR. HANSON:
>
> Q: Have you sought it or not?
>
> A: No.
>
> Q: Okay. For any registration not Thomas, that is, for any other work that you--for which you are claiming damages or remedy in this case, have you sought permission from any other entity including but not limited to RC2?
>
> A: No.
>
> Q: You haven't sought permission from RC2 for any of your copyright registrations?
>
> A: No.

Nor does Schrock's assertion that he "was never informed by any personnel of RC2/LCI or HIT Entertainment that they would

13

object to [him] registering copyrights in [his] photographs" (Schrock Ex. A, Schrock Aff. ¶12) create any inference that he had affirmative authority to register the copyrights. Silence in that respect cannot bespeak acceptance--after all, RC2 and HIT Entertainment were ignorant of Schrock's copyright registrations or his plans to seek them. Moreover, that Schrock affidavit faces still another difficulty: "A plaintiff cannot, however, create an issue of material fact by submitting an affidavit that contradicts an earlier deposition" (Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 759 (7th Cir. 2006)).

Without approval from the owner of the underlying work, approval that was totally absent here, Schrock could not obtain a copyright over his derivative works. Although Section 410(c) provides that registration of a work with the Copyright Office constitutes prima facie evidence of copyright validity, that provision creates nothing more than "simply a rebuttable presumption" (Mid America Title Co. v. Kirk, 59 F.3d 719, 721 (7th Cir. 1995)). Here that presumption of copyright has been thoroughly rebutted. Thus lacking a valid copyright in the works, Schrock also--by definition--lacks the ability to maintain a suit for copyright infringement against RC2 or HIT Entertainment.[13]

---

[13] Although RC2 prevails on that issue, it has overreached considerably by also claiming to be the joint author of Schrock's photographs (its Mem. 8-10 and R. Mem. 8-11). This Court rejects

14

### State Law Claims

With Schrock's federal theory of recovery now having been revealed as not even a pumpkin, let alone a fancied coach, his remaining grievances (bailment and conversion of the photographic transparencies) find themselves like Prince Charming at the stroke of midnight--all alone at the proverbial ball without even a glass slipper to clutch. And because Schrock's state law theories of recovery (brought under the rubric of supplemental jurisdiction) now lack any federal mooring, those remaining grievances are dismissed without prejudice (the "general rule" prescribed four decades ago in United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) and reiterated to this day by our Court of Appeals (among others)). In that respect, this Court expresses no view other than to say that the outcome of the state law theories of recovery is not so clear that judicial economy is disserved by their dismissal in favor of permitting them to be litigated in the state court system (if Schrock wishes to pursue them there), which can apply state law directly, rather than on a predictive basis as any federal court must do (on that score, contrast such cases as Sellars v. City of Gary, 453 F.3d 848, 852

---

that contention as lacking in merit--a holding that may be relevant if the parties' dispute is revived in another forum on the state law claims that are not decided here.

(7th Cir. 2006)).[14]

## Conclusion

Because as a matter of law Schrock does not hold a valid copyright over the photographs, his assertions of copyright infringement are dismissed, and his concomitant prayer for injunctive relief, accounting and declaratory relief as related to the copyright infringement claims are denied. In that regard there are no genuine issues of material fact, so that RC2 and HIT Entertainment are entitled to a judgment as a matter of law. And when that is coupled with the without-prejudice dismissal of Schrock's supplemental state law claims, this action is dismissed in its entirety--a final judgment.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 29, 2008

---

[14] By way of example (and with no intention of being exhaustive), the briefing on the current motions has not sufficiently fleshed out the effect of Schrock's effort at setting contractual limits on the further direct use (not copying) of his work product even in the absence of copyright.