UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL SCHROCK d/b/a DAN SCHROCK PHOTOGRAPHY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 04 C 6927 |
| LEARNING CURVE INTERNATIONAL, INC., and RC2 BRANDS, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the court on two motions filed by Defendants Learning Curve International, Inc., ("LCI") and RC2 Brands ("RC2"). First, LCI and RC2 move to dismiss Plaintiff Daniel Schrock's ("Schrock") Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Second, LCI and RC2 move for summary judgment pursuant to Fed. R. Civ. P. 56.[1] For the reasons set forth below, the motions are denied.

---

[1] LCI and RC2 move for summary judgment against Schrock as to all claims but their brief only tangentially refers to Schrock's breach of bailment, conversion, and accounting. Their arguments on these issues are not well-developed and lack of any citation to authority. Undeveloped arguments and arguments raised in footnotes are waived. *Goren v. New Vision Int'l*, 156 F.3d 721, 726 n.2 (7th Cir. 1998); *U.S. v. White*, 879 F.2d 1509, 1513 (7th cir. 1989). Therefore, we deny the motion for summary judgment with respect to those claims. We confine our examination to the copyright infringement claim only.

**BACKGROUND**

Learning Curve International ("LCI") is a producer and distributor of children's toys.[2] LCI entered into a licensing agreement with HIT Entertainment ("HIT"), the owner of all worldwide rights in the famous "Thomas & Friends" characters.[3] In the agreement, HIT granted LCI a license to create and market toys based on HIT's characters and properties. Pursuant to that license, LCI has developed hundreds of different toys with worldwide distribution.

Daniel Schrock ("Schrock"), is a professional photographer based in Chicago, Illinois. Schrock began his direct business relationship with LCI in 1999.

At first, Schrock negotiated the use of his services over the phone with Mary Ann Borgmann ("Borgmann"), art director of LCI. Schrock initially proposed a day rate of $2,000; Borgmann responded that she was working on a tight budget and that such compensation was not acceptable. Schrock then offered to lower his rate to $1,800 per day and the parties agreed to that amount. From March 8, 1999, to April 2003, LCI would repeatedly engage Schrock to create product photographs of its toys for marketing purposes. During that period, Schrock produced approximately 1,800

---

[2] LCI was acquired in early 2003 by Racing Champions Ertl Corporation, which later changed its name to RC2 Corporation ("RC2"). RC2 Brands, Inc., ("RC2 Brands"), a designer, producer, and marketer of children toys, is a subsidiary of RC2.

[3] Including copyrights, trademarks, and other intellectual property rights.

photographs, embodied in color transparencies, illustrating several of LCI's toy lines, including part of its "Thomas & Friends" toys.

The parties never memorialized any agreement in writing. As a consequence, the parties' interpretations of the terms of their business relationship diverge extensively.

Schrock contends that during a three-day shoot in March 8, 1999, Schrock and Borgmann had a conversation regarding the extent of the license Schrock would grant for use of his photographs. Over the course of this conversation, Schrock expressed his desire to retain ownership of the copyright on his photographs and impose limitations on the use of his work. Schrock's first limitation pertained to the mediums in which his photos could appear. Schrock asserts that he made clear to LCI employees, namely Borgmann and her superior, Nora Knaup Mavrelis ("Knaup"), that his license would only permit use of his photographs in specific annual catalogs and/or on specific years' packaging.

Schrock's second limitation related to the duration of LCI's use of his photographs. Schrock stated in his deposition that during the March 8 shoot, he told Borgmann that use of his photographs was typically granted for one year. According to Schrock, Borgmann told him she had relayed the proposed temporal limitation back to Knaup, her supervisor, and Knaup objected to the one-year limitation because LCI needed longer usage periods. Schrock testified that he offered to accommodate LCI by

granting a two-year usage which would provide ample time to prepare catalog and packaging materials. Schrock stated that Borgmann orally agreed to all the license restrictions. In other words, Schrock and LCI reached an understanding that Schrock's work could only be used for a period of two years for product packaging and for specific product annual catalogs. Any use beyond the term authorized by the license would trigger additional fee payments.

LCI recalls a different sequence of events. LCI asserts that Borgmann never accepted the two-year term. First, Borgmann testified that the verbal understanding the parties had reached over the content of the license was that Schrock would grant LCI an unlimited license for use with the exception of national advertising. Moreover, Borgmann avers that she never had any discussion with Schrock as to limitations on years of usage. Borgmann stated that she never told Schrock that LCI had accepted Schrock's proposed limitations on use of his works or agreed to any additional fee payments.

Regardless of their respective understanding of their arrangement, the parties proceeded to shoot. Schrock provided LCI with his services from 1999 to approximately May 2003. Consistent with his practice, Schrock would first send to LCI estimates based upon the latter's description of its usage needs. Upon approval of the estimates, Schrock would perform the photographic session and would thereafter send separate

invoices for each session. As part of LCI's course of dealing, Borgmann and Knaup would keep the estimates in a file in order to review them against the invoices. During the parties' four-year-long relationship, Schrock sent LCI roughly one hundred invoices. Borgmann and Knaup would review the invoices, handwrite some observations, and finally approve them for payment. All invoices from March 1999 to May 2003 were promptly and fully paid. During this period, Schrock received over $400,000 for his services.

Both sides rely on the invoices Schrock sent to LCI to support their version of the oral licensing agreement. LCI highlights the very first invoice which they believe disproves Schrock's account of the agreement. The invoice for the March 8, 1999 shoot contained a written restriction as to "product packaging" but did not indicate a two-year usage limit. The only reference to "usage" appeared at the bottom of the invoice and remained blank. Schrock replicates that the first twelve invoices he sent to LCI included restrictions as to packaging and catalog use and that such invoices contained Borgmann's and Knaup's hand-written notations demonstrating that LCI understood and agreed to the restrictions. LCI claims that none of them referred to a two-year limitation and that the spot for a usage fee always remained blank. LCI notes that more than a year into the parties' relationship Schrock unilaterally inserted the phrase "usage for two

years with no usage fees" into the invoices' job description.[4] Borgmann maintains that she did not object to the invoices containing the two-year usage limitation because she did not notice the change in the licensing language.

In November 2002, LCI attempted to memorialize the parties' relationship in writing by requesting that Schrock sign a photography agreement. Schrock grew suspicious of LCI's attempt to transform their business relationship into a "work-for-hire" arrangement that would allow LCI to secure ownership and control of his copyrighted photographic creations. Schrock refused to sign the document. Subsequently, Schrock continued to work for LCI. After April 2003, LCI, which had been since acquired by RC2, decided to stop engaging Schrock.

In spring 2004, Schrock became aware that LCI continued to use some of his pictures in its printed advertising, on packaging, and on the internet. Schrock argues that he never licensed any of his photographs for use on a website. LCI claims it possessed an unrestricted license. At about the same time, Schrock learned that LCI had, without consent, infringed his works by reproducing his photographs outside the time frames for which Schrock had granted licenses, both in catalogs and on packaging. The same year, Schrock, seeking copyright protection, registered with the U.S. Copyright Office a large number of photographs that he had shot for LCI.

---

[4] Invoice of March 30, 2000.

In October 2004, Schrock filed suit against HIT, LCI, and RC2 asserting claims of copyright infringement, breach of bailment, conversion, and accounting. The district court granted summary judgment for the defendants, holding that Schrock had no copyright protection because he had not obtained authorization by LCI to copyright the photographs. Schrock appealed the decision. In November 2009, recognizing Schrock's copyright for his photographic derivative works, the Seventh Circuit reversed the district court's order and remanded the case for further proceedings. LCI and RC2 now move to dismiss Schrock's Amended Complaint for lack of subject-matter jurisdiction, or in the alternative, for summary judgment.

**LEGAL STANDARD**

**I.      Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is to dismiss claims over which the court lacks subject-matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pac. R.R. Co.,* 794 F.2d 1182, 1188 (7th Cir. 1986). The party asserting federal jurisdiction bears the burden of establishing that it is present. *See Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff must support his allegations with competent proof of jurisdictional facts. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

## II. Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

With these principles in mind, we turn to LCI's motions.

## DISCUSSION

## I. Subject-Matter Jurisdiction

LCI moves to dismiss the case for lack of subject-matter jurisdiction. LCI argues that the court lacks jurisdiction because the dispute does not arise under the copyright

laws but is fundamentally a breach-of-contract case. In contrast, Schrock argues that the court has jurisdiction under federal copyright-law.

The Copyright Act grants certain exclusive rights to copyright owners and provides for remedies for infringements of those rights. *See* 17 U.S.C. § 510 *et seq*. Pursuant to 28 U.S.C. § 1338(a), district courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks." An action arises under the Copyright Act if the complaint requests a remedy expressly granted by the Act, such as a private suit for infringement. *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2nd Cir. 1964). When disputes arise under copyright licensing agreements, the injured party may assert claims under either or both the Copyright Act and state contract law.

Other Circuits have developed various tests dictating when such situations fall within federal jurisdiction. The Fourth and the Ninth Circuits devised the "face of the complaint test," according to which the court merely examines the complaint to determine whether the case involves copyright law. *Topolos v. Caldeway*, 698 F.2d 991 (9th Cir. 1983); *Vestron v. Home Box Office*, 839 F.2d 1380 (9th Cir. 1988); *Arthur Young & Co. City of Richmond*, 895, F.2d 967 (4th Cir. 1990). A different approach emerged in the Second Circuit in *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926 (2nd Cir. 1992), where the court adopted the "principal and controlling issue" test.

Courts employing this analysis will look beyond the face of the complaint to ascertain whether the plaintiff's infringement claim is only 'incidental' to the plaintiff's claim, and, if so, decline jurisdiction. Courts in the Seventh Circuit have applied both tests. *Powell v. Green Hill Publishers, Inc.*, 719 F.supp. 743 (N.D.Ill. 1989); *Malinowski v. Playboy Enters., Inc.*, 706 F.supp. 611, 616 (N.D.Ill. 1989).

Under either test, we find that Schrock's complaint falls within our jurisdiction. Both the face of the complaint and the controlling issues expressed therein demonstrate that a copyright claim is the heart of this dispute. Schrock has couched his jurisdictional claim on 28 U.S.C. § 1338(a). According to his complaint, Schrock claims that he is the author of specific photographs of the "Thomas & Friends" toys; that in March 1999 he entered into an oral licensing agreement with LCI for the use of these photographs; that the payment of the invoices for his services is not disputed; that in 2004 he registered his photos for copyright protection; that LCI's copying of the photographs on printed advertising, on packaging and on the Internet beyond the two-year term violated the scope of their agreement; that in October 2004 he sued HIT and LCI for copyright infringement and, *inter alia*, for accounting. On appeal, the Seventh Circuit held that as the creator of the photos, Schrock had a valid copyright arising by operation of law and that his work qualified for the limited derivative-work copyright provided by 17 U.S.C. §103(b). *Schrock v. Learning Curve Int'l*, 586 F.3d 513, 524-25 (7th Cir. 2009).

Therefore, we find that the case does properly "arise under" the copyright laws and that federal jurisdiction is established.

## II. Merits of the Partial Summary Judgment Motion

LCI first argues that the parties never reached a binding agreement on the two-year usage restriction. Several reasons are advanced by LCI to reach that conclusion, notably that Borgmann never concretely accepted such a time limitation; that Schrock unilaterally inserted the time-restriction in his invoices more than a year into the parties' relationship and without LCI's consent; that in any event Schrock's proposed two-year usage "with no additional fees" was too ambiguous to be accepted; and that such ambiguity should be construed against the drafter.

When federal courts have exclusive jurisdiction to determine statutory infringement, they also have incidental power to hear and decide questions of contract law such as validity and scope of a license. *I.A.E., Inc., v. Shaver*, 74 F.3d 768, 774 n.4 (7th Cir. 1996). In doing so, courts typically turn to relevant state law. *Automation By Design, Inc., v. Raybestos Products Co.*, 463 F.3d 749, 753 (7th Cir. 2006); *Kennedy v. Nat'l Juvenile Det. Ass'n,* 187 F.3d 690, 694 (7th Cir. 1999); *I.A.E., at* 774 n.4. Under Illinois law, material fact issues relating to the existence of an oral contract, the substance of the parties' intent in forming said contract, and the meaning of its terms

are all questions of fact to be determined by the trier of fact. *Anderson v. Kohler*, 922 N.E.2d 8, 18 (Ill. App. 2009).

In this case, the evidence submitted with the summary judgment motion does not establish as a matter of law that Schrock granted an unrestricted license, either express or implied, or that LCI contractually limited Schrock's rights in any way. Most of the evidence pertains to contractual bargaining that took place orally before, during, and after the March 8, 1999 shoot as well as other shoots. Each party claims the evidence supports its own position. The evidence in the record clearly points to a genuine question of material fact on whether a binding agreement existed between the parties and its terms. Therefore, summary judgment is inappropriate.

LCI also argues that in any event, Schrock's alleged grant of a two-year license is barred by the statute of frauds because it was not in writing and signed by the party to be charged. 740 ILCS §80/1 (2010). Illinois law provides that, under the doctrine of full performance, where a party has completely performed a contract, the contract is enforceable and the statute of frauds may not be used as a defense. *Anderson v. Kohler*, 922 N.E.2d 8, 19 (Ill. App. 2009). Here, in the event the trier of fact finds that an agreement existed between the parties, LCI would not be able to invoke the statute of frauds, since Schrock has fully performed his part of the bargain.

## CONCLUSION

For the reasons discussed above, LCI's motions are denied.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:     September 29, 2010